UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ROSA V. JACKSON,

          Plaintiff,

        v.                           Case No. 04-C-1050

JO ANNE BARNHART,
Commissioner of Social Security,

          Defendant.

## DECISION AND ORDER VACATING AND REMANDING CASE TO THE COMMISSIONER

Plaintiff, Rosa Jackson, brings this action under 42 U.S.C. §§ 402(e), 405(g), 1381 for judicial review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI). Jackson filed applications for DIB and SSI on February 27, 2001, claiming she was disabled commencing January 1, 1997, due to her knee and back pain. When the Social Security Administration (SSA) denied her application initially and upon reconsideration, Jackson requested a hearing.

Administrative Law Judge (ALJ) Robert Bartlett, Jr., conducted the hearing on March 12, 2003, during which Jackson, who was represented by counsel, testified. While purporting to apply the SSA's five-step sequential evaluation in a March 12, 2004, opinion, the ALJ concluded that Jackson retained the residual functional capacity (RFC) to perform medium work, which, combined with her age, education, and work experience, led to his ruling

that she was not disabled. Therefore, Jackson was not entitled to receive DIB or SSI. The appeals council denied review of the case.

Plaintiff argues in this appeal that the ALJ erred by (1) failing to give sufficient weight to medical opinions of Jackson's doctors, (2) finding Jackson could perform medium level work, and (3) improperly evaluating Jackson's credibility. Because this court concludes that the ALJ's decision is neither supported by "substantial evidence" nor based on the proper legal criteria, the decision is vacated and remanded.

## I. FACTS

### A. Background

Jackson, who was born on May 7, 1948, was fifty-five years old when the ALJ issued his decision. (R. 71, 168.) She graduated from high school and has worked as a housekeeper her whole career – for commercial housecleaning services and for private homeowners. (R. 76, 170-75.) At the time of her hearing before the ALJ, Jackson worked seven hours per week performing "light cleaning" – such as dusting, emptying the dishwasher, and folding laundry – at a private residence. (R. 162-63.) While she used to work approximately thirty to forty hours a week, Jackson claims that her back and knee pain has limited her to part-time work since 1996. (R. 76, 171.)

### B. Medical Evidence of Record

The record reveals that Jackson sought medical attention from three physicians - doctors Theodore Green, Lubsey (Dr. Lubsey's first name is not provided in the record), and Jennifer Klopfstein. Also, she was evaluated by state agency doctors and by Dr. Ward Jankus at the direction of the SSA.

2

Although Jackson alleged that her back and knee pain rendered her disabled as of January 1, 1997, the earliest treatment note in the record is dated May 19, 2000. On that date, she visited Dr. Green because she had poked herself in the eye. (R. 93.) In August of 2000, Jackson complained to Dr. Green that she had experience soreness in her lower back for two weeks. Dr. Green diagnosed her as suffering "lumbar strain" and prescribed Flexeril and back exercises, which relieved the pain. (R. 92-93.) Jackson continued to visit Dr. Green because of her back pain; he treated her on eighteen separate occasions between August 2000 and June 2001. (R. 91-95.) Dr. Green continued to diagnose lumbar strain as well as degenerative joint disease, for which he prescribed Relafen. (*Id.*)

Dr. Jankus evaluated Jackson on September 12, 2001, regarding her disability claim. (R. 79.) At the time of Jankus' examination, Jackson worked part-time for approximately seven hours per week. (R. 80.) She reported to Dr. Jankus that her back pain was constant, and that she took one tablet of Flexeril and 800 milligrams of Ibuprofen each day. (R. 79.) On examination, Dr. Jankus found that Jackson experienced "mild flattening of the lumbar lordosis," stiffness when she walked, as well as tightness and pain in her lower back during a range-of-motion test. (R. 80-81.) However, Dr. Jankus found no abnormalities in Jackson's knees. (*Id.*) He diagnosed her as having "chronic mechanical back pain." (R. 81.) Nevertheless, lumbar spine x-rays revealed "no evidence of significant degenerative osteoarthritic disease." (R. 82.)

On September 28, 2001, a state agency physician evaluated Jackson's RFC. (R. 107.) The agency physician determined that Jackson (1) could lift twenty pounds occasionally; (2) could lift ten pounds frequently; (3) could stand or walk for six hours in an

eight-hour workday; and (4) was not impeded by any "postural limitations" such as climbing, balancing, stooping, kneeling, or crouching. (R. 101-102.)

On June 11, 2002, Dr. Green performed his own assessment of Jackson's RFC, which contrasted the agency RFC evaluation performed eight months earlier. (R. 111-116.) Dr. Green found that Jackson was more limited by her infirmities than the agency physician found. Dr. Green determined that Jackson (1) could lift twenty pounds rarely, (2) could lift ten pounds occasionally, (3) could not walk a full city block without rest or severe pain, (4) could sit for one hour at a time, (5) could stand for thirty minutes at a time, and (6) could sit and stand or walk for four hours in an eight-hour workday. (R. 112-115.) Consequently, Dr. Green concluded that Jackson was "incapable to work [sic] full time." (R. 110.) He opined that she suffered "mild vertebral degeneration" and "decreased lumbar lordosis." (R. 111.)

When Jackson's insurance policy changed during the summer of 2002, Dr. Lubsey at the Lubsey Medical Center replaced Dr. Green as her primary care physician. (R. 117, 144, 176.) Jackson first sought treatment from Lubsey in August 2002. (R. 117, 144.) Upon examination, Dr. Lubsey found that Jackson could bend only thirty degrees forward and ten degrees to the side without feeling back pain, and therefore prescribed Arthrotec and Ultracet. (R. 120, 121.) Jackson returned to Dr. Lubsey in September 2002, at which time Dr. Lubsey described Jackson's back pain as moderate to severe. (R. 125.) He diagnosed chronic low back pain, refilled Jackson's prescriptions, and referred her to Dr. Klopfstein, a physiatrist, to evaluate her pain. (*Id.*)

On December 9, 2002, Dr. Klopfstein noted that Jackson was being treated for back pain stemming from her degenerative joint disease, and that she was incapable of working more than two and one half days per week. (R. 126.)

4

**C. Hearing Testimony**

During the March 23, 2003, hearing before the ALJ, Jackson testified regarding her pain and her activity levels. She stated that her back pain started in approximately 1972, and that it "got really bad in the late [19]80's." (R. 175.) On a pain scale ranging from zero to ten – with zero denoting no pain and ten being unbearable pain – Jackson stated that her pain level on an average day registers a five or six, while her pain on a bad day registers an eight. (R. 165-66.) Moreover, she suffers pain in her knees, which "have a tendency to give out." (R. 162.) As a result, she has fallen down stairs on occasion. (R. 165.)

The pain limits her activity. From 1989 to 1995, she worked approximately thirty to forty hours per week as a house cleaner. (R. 163, 165.) At that time she was able to vacuum, clean blinds, scrub floors and counter tops, and do laundry. (R. 171.) However, her back pain forced her to scale back her hours and responsibilities in 1996. (R. 163, 165.) She now works two days per week for three and one half hours each of those days. (R. 162.) Moreover, she is limited to doing "light" cleaning chores such as folding laundry, dusting, and emptying the dishwasher. (R. 163.) On those days she works, the pain leaves her unable to "do anything else" the rest of the day. (R. 162.)

Beyond limiting her employment activity, Jackson testified that her back pain limits her domestic and recreational activity as well. According to Jackson, she is unable to drive after taking her medication because it leaves her drowsy. (R. 163-64.) Moreover, pain restricts Jackson to approximately four hours of sleep per night. (R. 180.) In addition, she is unable to do her own laundry and grocery shopping. (R. 168.) However, she does attend church services and programs, and performs physical therapy exercises each day. (R. 166-67, 181.)

5

### D. ALJ Findings

Following a hearing on March 12, 2003, the ALJ issued an opinion dated March 12, 2004. (R. 16.) The ALJ found that (1) Jackson had not engaged in substantial gainful activity since 1997; (2) Jackson had a severe impairment that did not meet or equal one of the impairments listed in the Administration's regulations as being so severe as to preclude her from engaging in substantial gainful activity; (3) Jackson exaggerated the severity of her back pain and the magnitude of its debilitating effect; (4) Jackson retained the RFC to perform medium work; and (5) in light of Jackson's RFC, age, education, and work experience, she was not disabled. (R. 21-22.)

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 402(e), 405(g), and 1381, a district court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Id.* Substantial evidence is relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). This court cannot reweigh evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). However, if the ALJ commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Id.* Such an error is committed if the ALJ fails to comply with the Commissioner's regulations and rulings. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

An ALJ must "minimally articulate his reasons for crediting or rejecting evidence or disability," *Clifford v. Apfel*, 227 F.3d 863, 870 (7th. Cir. 2000), "build[ing] an accurate and

6

logical bridge from the evidence to his conclusion," *id.* at 872.  Although the ALJ need not discuss every piece of evidence, he cannot select and discuss only the evidence supporting the decision.  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that.  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  The district court should remand the case if the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review."  *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted).  However, a "sketchy opinion" may be sufficient if it is clear the ALJ considered the important evidence and his reasoning can be traced.  *Id.* at 787.

Jackson raises three issues: whether the ALJ committed an error of law and failed to support with substantial evidence (1) his decision not to give controlling weight to Jackson's doctors' medical opinions; (2) his finding that Jackson could perform medium level work; and (3) his credibility determination.

## III. DISCUSSION

## A. ALJ's Decision to Not Give Physicians' Opinions Controlling Weight

A treating physician's opinion regarding the nature and severity of a medical condition must be given controlling weight if it is well-supported by the medical findings and not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2). However, a claimant is not entitled to disability benefits merely because a physician finds that the claimant is "disabled" or "unable to work."  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir.

7

2000).  The ALJ may reject a physician's opinion for "good reasons,"[1] as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability."  *Clifford*, 227 F.3d at 870.  Thus, the Commissioner, rather than the claimant's physician, ultimately decides whether the claimant is disabled.  20 C.F.R. § 404.1527(e); *Clifford*, 227 F.3d at 870.

Here, the ALJ decided not to give Jackson's treating physicians' opinions controlling weight because he concludes that the opinions were inconsistent with the medical evidence.  (R. 20-21.)  The ALJ explains why he concludes that the medical evidence was inconsistent both with Dr. Green's statement that Jackson was "incapable to work full-time" [sic] and with Dr. Klopfstein's statement that Jackson was "unable to work more than two and a half days per week."  (R. 19-20.)  For instance, while the ALJ observes Dr. Green's diagnoses of lumbar myositis and degenerative joint disease, the medical records remain rather "nonspecific," mostly noting Jackson's complaints as well as the medication and treatment her doctors have prescribed. (R. 21; 90-93; 108-109; 117-125.) Moreover, the ALJ considers that the Wisconsin Disability Determination Services medical staff concluded that Jackson retained the RFC for only light work.  However, the ALJ notes his skepticism at this conclusion: "the fact of the matter is medical records [sic] have not been all that impressive and despite claimant's assertions [that she suffers] severe arthritis, the x-rays which have been taken have failing [sic] to show any significant arthritic changes or degenerative disk disease."  (R. 20.)  In addition, Jackson had not undergone radical therapy or back surgery;

---

[1]Such "good reasons" include the following: (1) the length of time the physician has treated the claimant, (2) the extent of examinations and testing performed by the physician, (3) the extent to which the physician explains the basis for his or her opinion, (4) the extent to which the physician's opinion is consistent with the record, and (5) other factors that may support or contradict the opinion.  20 C.F.R. § 404.1527(d).

and, Jackson's condition warranted merely "conservative treatment" such as physical therapy exercises and pain medication. (R. 21.)

A curious contradiction stands out in the ALJ's opinion. He catalogues in great detail Dr. Green's observations during this RFC Assessment of Jackson on June 11, 2002. (R. 19.) Yet, he states that "actual findings" to support Dr. Green's conclusion that Jackson is unable to work full-time "are nonexistent." (R. 21.) Dr. Green's conclusion that Jackson is unable to work full-time is contained in a note appended to his June 11, 2002, RFC Assessment. Presumably, then, Dr. Green's statement that Jackson is incapable of working full-time is predicated on the results of the assessment. Why the ALJ painstakingly documents the assessment, but then asserts that Dr. Green's conclusion is not supported by medical evidence is a mystery. In any event, the ALJ properly took the relevant medical evidence into account; he just did not find the evidence controlling in rendering his decision.

While the ALJ's opinion is not a picture of clarity, it at least "minimally articulates" his reasons for not ascribing controlling weight to the opinions of Jackson's physicians. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th. Cir. 2000). As the law requires, the ALJ considered evidence favoring and disfavoring Jackson. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). As such, his "sketchy opinion" is sufficient because he did consider the important evidence, and his reasoning can be traced. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). The ALJ concluded that the medical evidence did not support granting controlling weight to the opinions of Jackson's physicians. He supported his conclusion with substantial evidence, and therefore this court will not disturb it.

9

**B. ALJ's Finding that Jackson Could Perform Medium Work**

After deciding not to give the opinions of Jackson's physicians controlling weight, the ALJ goes on to conclude that Jackson retains the RFC to perform medium work. In so concluding, the ALJ fails to support his determination with substantial evidence and commits an error of law.

**1. The ALJ Fails to Support with Substantial Evidence his Conclusion that Jackson Could Perform Medium Work**

At the end of his opinion, the ALJ asserts that Jackson "has the residual functional capacity for the full range of medium work." (R. 21.) The *Dictionary of Occupational Titles* defines medium work as follows: "Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds constantly to move objects. Physical Demand requirements are in excess of those for Light Work." Nowhere in his opinion does the ALJ assess Jackson's physical ability to meet the requirements of medium work. What is more, no medical records show that Jackson retains the capacity to exert twenty to fifty pounds of force occasionally, ten to twenty-five pounds of force frequently, or ten or fewer pounds constantly. Nor did the ALJ question Jackson at the hearing about her ability to do so.

Not only does the record fail to support the ALJ's conclusion that Jackson retains the RFC to perform medium work, it actually contradicts the ALJ's conclusion. The record contains two RFC Assessments (which are used to measure a claimant's ability to work), which indicate Jackson cannot perform medium work. The first assessment was conducted by state medical personnel on September 28, 2001. (R. 100-107.) The agency found that Jackson was capable of lifting twenty pounds occasionally and ten pounds

frequently. (R. 101.) Although the assessment does not explicitly indicate what level of work Jackson was capable of performing, the ALJ acknowledges in his opinion that the assessment revealed that Jackson "retained the capacity for light work." (R. 20.) This acknowledgment is consistent with the *Dictionary of Occupational Titles'* definition of light work.[2]

The second RFC Assessment was conducted on June 11, 2002, by Dr. Green. (R. 111-116.) The ALJ notes the results of this assessment in his opinion. According to Dr. Green's assessment, in addition to being able to lift less then ten pounds only occasionally and twenty pounds rarely, Jackson could not walk a full city block without pain; could sit for only one hour at a time; could stand for only thirty minutes at a time; and could sit, stand, or walk for four hours out of an eight-hour workday. (R. 113-115.) Thus, Dr. Green's RFC Assessment of Jackson is the second one contained in the record that shows Jackson's RFC to be consistent with the RFC of an individual who can perform only light work.

In the face of two RFC Assessments to the contrary, the ALJ's conclusion that Jackson retains the RFC to perform medium work is not supported by substantial evidence. Moreover, because the ALJ fails to supply evidence showing that Jackson retained the RFC to perform medium work, he impermissibly fails to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th. Cir. 2000).

The ALJ's failure to supply any reasoning for his conclusion is magnified by the ramifications of his decision. Given Jackson's age, education, and work skill, a finding that she is capable of *medium* work permits the conclusion that she is not disabled. However, the Vocational Rules mandate a finding that Jackson is disabled if she is capable of only *light*

_____

[2] The *Dictionary of Occupational Titles* defines light work as follows:
Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly . . . to move objects. . . .

11

work.  *Compare* Vocational Rule 203.14, Table 3, Appendix 2, Subpart P (providing for conclusion that claimant is not disabled) *with* Rule 202.04, Table 2, Appendix 2, Subpart P (providing for conclusion that claimant is disabled).  The law requires the ALJ to explain why he concludes that Jackson is capable of performing medium work rather than merely light work.  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th. Cir. 2000).  His failure to do so constitutes error, and thus requires this court to vacate and remand his decision.  Even so, the court will address additional errors, as they should not be repeated.

**2.   In Concluding that Jackson Retains the RFC to Perform Medium Work, the ALJ Commits an Error of Law**

The ALJ commits an error of law in concluding that Jackson retains the RFC to perform medium work because he fails to follow the SSA's five-step test for determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).

Under this test, the ALJ must determine:

(1) Whether the claimant is currently engaged in substantial gainful activity (SGA);

(2) If not, whether the claimant has a severe impairment;

(3) If so, whether the claimant's impairment(s) meets or equals one of the impairments listed in the Administration's regulations as being so severe as to preclude SGA;

(4) If not, whether the claimant can perform past relevant work;

(5) If not, whether the claimant can make the adjustment to other work.

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The ALJ follows the SSA's first three steps: (1) he concludes that Jackson is not engaged in substantial gainful activity; (2) he concludes that Jackson suffers from a "severe"

Case 2:04-cv-01050-CNC   Filed 04/25/06   Page 12 of 19   Document 29

impairment; and (3) he concludes that Jackson's impairments do not equal the ones listed in the Administration's regulations. (R. 20-21.) However, it is while traveling the track of steps four and five that the train derails.

When a claimant's impairment is "severe," but does not equal one of the impairments listed in the Administration's regulations, the ALJ must consider whether the claimant possesses the RFC to perform past work. 20 C.F.R. § 416.920(a)(4). The ALJ's opinion does not explicitly address this step. Presumably, the ALJ believes that his finding that Jackson is capable of performing "medium work" is a self-evident indication that Jackson is capable of performing her past work. The court is mindful that Jackson continues to work as a cleaner for a private homeowner, a job that she has maintained since 1998. (R. 170.) In that vain, she is engaged in past work. However, the ALJ neglects to acknowledge that Jackson testified that in approximately 1995 she changed her job responsibilities as a cleaner. For example, while prior to 1995 Jackson performed such cleaning services as vacuuming, cleaning blinds, scrubbing bathrooms and floors, and carrying laundry up and down stairs, she is now relegated to performing "lighter" cleaning such as dusting, folding laundry, and emptying the dishwasher. (R. 163, 171.) In short, the ALJ undertakes no effort to explain whether and why Jackson is able to perform past relevant work. His bare conclusion that Jackson is capable of performing medium work does not include any analysis that buttresses his finding at step four. Hence, the ALJ's failure to affirmatively address step four constitutes legal error.

The error is compounded because it puts the step-five analysis in limbo. If the ALJ concludes that the claimant can perform past relevant work, the five-step test ends at step four. However, if the claimant is not capable of performing past relevant work, the

Case 2:04-cv-01050-CNC   Filed 04/25/06   Page 13 of 19   Document 29

Secretary bears the burden of demonstrating that the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4). To carry out his burden, the Secretary must show that the claimant can be successful performing a significant number of other jobs in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Because it is unclear whether the ALJ concluded that Jackson is capable of performing past work, it is also unclear whether the analysis ends at step four or whether the analysis should instead proceed to step five.

If the ALJ concluded that Jackson could not perform her past relevant work, the Secretary failed to meet his burden at step five. However, no effort was made to show that a significant number of jobs exist in the national economy that Jackson could be successful performing. The SSR advises that a vocational expert's testimony is helpful in making such a showing. *See, e.g.,* SSR 83-14. For instance, a vocational expert may be called to testify regarding the number of jobs available to a person of the claimant's age, education, work experience, and RFC. However, a vocational expert was not present at the hearing, and no testimony, or any other evidence for that matter, was submitted to satisfy the Secretary's step-five burden of proof.

## C. ALJ's Finding that Jackson's Statements about the Severity of her Pain and Its Limiting Effects Were "Exaggerat[ed]"

If medical evidence shows that the claimant suffers an impairment that could reasonably be expected to produce symptoms such as pain, the ALJ must evaluate the intensity and persistence of the symptoms to determine whether they limit the capacity for work. 20 C.F.R. § 416.929(c)(1). In evaluating the intensity and persistence of the symptoms, the ALJ must assess all available evidence, including medical history, medical

14

evidence, the claimant's statements, treating physician opinions, and statements from other persons about how the symptoms affect the claimant. *Id.*

An ALJ has to give due regard to a claimant's subjective complaints, if supported by medical signs and findings. *Clifford*, 227 F.3d at 871. But, even if a claimant's statements are not substantiated by objective medical evidence, the claimant's testimony about the intensity or persistence of her pain or other symptoms or about their effect on her ability to work must not be rejected outrightly. 20 C.F.R. § 416.929(c)(2); SSR 96-7p. Instead, whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of her pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on the entire case record. SSR 96-7p.

Accordingly, when evaluating credibility, the ALJ must analyze: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures, other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms. SSR 96-7p. Further,

> [i]t is not sufficient to make a *conclusory* statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, *and*

15

> *must be sufficiently specific to make clear to the individual and to
> any subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.*

SSR 96-7p, *quoted in Brindisi*, 315 F.3d at 787 (emphasis added).  A credibility finding "cannot be based on an intangible or intuitive notion about an individual's credibility."  SSR 96-7p.

For his part, the ALJ notes in his opinion portions of the seven factors SSR 96-7p requires him to review as part of the credibility analysis.  First, with regard to Jackson's daily activities, he observes that, while she was able to take care of her grooming and household needs, Jackson must rely on her daughter to do her shopping and laundry.  (R. 20.)  Second, throughout his opinion, the ALJ notes Jackson's ongoing complaints about pain in her back and knees; he notes as well Jackson's description of the intensity of her pain often registering a five or six on a ten-point scale (with ten being the most intense pain).  (R. 20.)  Third, the ALJ observes that Jackson's pain was aggravated by bearing weight.  (R. 20.)  Fourth, the ALJ points out that Jackson was prescribed Relafen and Ultracet at intermittent periods.  (R. 18-19.)  Fifth, Jackson's physical therapy with Dr. Klopfstein is mentioned.  (R. 20.)

Despite including in his decision all of the considerations SSR 96-7p requires, the ALJ's credibility assessment remains legally inadequate.  For example, Jackson cites limitations that were not discussed by the ALJ.  Jackson testified that she is incapable of "doing anything else" on those days she works.  (R. 162.)  Additionally, Jackson stated that her condition required her to give up gardening and lawn care five or six years prior to the hearing.  (R. 181-82.)  Finally, according to Jackson, she sleeps only four hours per night on average because she is so often forced awake by her discomfort.  (R. 180.)  None of this

testimony is considered by the ALJ in his opinion. In *Gary D. Moore v. JoAnne B. Barnhart*, Case No. 03-C-0956 (E.D. Wis. 2005), this court cited the ALJ's failure to include in his opinion Moore's testimony regarding his activity constraints as warranting a reevaluation of credibility.

Moreover, the ALJ commits similar error regarding his assessment of Jackson's pain intensity. While the ALJ's observes that Jackson described her average pain as being a five or six on a ten-point scale, he fails to recognize Jackson's testimony that her pain reached a level of eight on a "bad day," and that those "bad days" occurred as often as three or four days per week. (R. 20, 166.) The ALJ concludes that Jackson's "pain and limitation is not as severe or limiting as she has alleged with [sic] clear elements of exaggeration present." It is evident from that conclusion that the ALJ believes Jackson's testimony was not supported by the objective medical evidence. (R. 21.) However, when a claimant's statements regarding the intensity and limiting effects of pain are not supported by the medical evidence, "the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. Consequently, the ALJ's omissions demonstrate that he did not consider the entire record.

In addition, the court notes that the ALJ's credibility determination seems to have been based, at least in part, on speculations regarding Jackson's earnings history. While Jackson testified that she reduced her work from full-time to part-time beginning in approximately 1996, her earnings did not decrease concomitantly. (R. 45, 162, 171.) It appears that the ALJ is troubled by Jackson's apparent uniform earnings, referring to them three times in the course of his seven-page opinion, and has drawn broad inferences from them that he did not explain fully. The ALJ speculates twice that Jackson's employer did not

17

report all of the wages that he paid to her.  (R. 17, 20.)  Further, the ALJ strongly suggests, without stating so directly, that Jackson's earnings record factored into his conclusion that she exaggerated.  "There has been nothing in the medical records to suggest any deterioration in claimant's status one way or the other and the fact of the matter is claimant's reported earnings show no significant change over the last 15+ [sic] years, notwithstanding claimant's assertions of having decreased her hours from full time to part-time [sic]."  (R. 20.)  The court is perplexed about how Jackson's medical record relates to the absence of significant change in her reported earnings.  The ALJ does not make clear the import of Jackson's earnings record in reaching his conclusions.

Finally, the ALJ's credibility determination is impermissibly conclusory.  He merely includes in his "findings" that "clear elements of exaggeration" are present in Jackson's testimony related to her pain and its effects on her activities.  (R. 21.)  An ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, *quoted in Brindisi*, 315 F.3d at 787.  The ALJ's decision does not conform to this standard.  Consequently, reevaluation of credibility is warranted.

## IV. CONCLUSION

In sum, the ALJ committed error of fact and law.  First, the ALJ failed to support with substantial evidence his conclusion that Jackson is capable of performing medium work.  Second, in so doing, the ALJ did not follow step-five of the SSA's test because the Secretary

did not attempt to show Jackson could perform work available in significant numbers. Finally, the ALJ did not include specific reasons for his credibility determination.

Now, therefore,

IT IS ORDERED that the Commissioner's decision is vacated, and the case is remanded to the Commissioner for further proceedings consistent with this decision, pursuant to sentence four of 42 U.S.C. § 405(g).

Dated at Milwaukee, Wisconsin, this 25th day of April, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge